UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SCHOMAKER,

        Plaintiff,

Case No. 1:10-cv-764

Hon. Robert J. Jonker

v.

GENERAL MOTORS, INC., *et al.*,

        Defendants.
                                        /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action in which plaintiff has alleged that defendants engaged in age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et *seq.* This matter is now before the court on a motion to dismiss filed by defendants General Motors LLC, David Stroup, Steven Tomaszewski and Raymond Tessier (docket no. 13); plaintiff's motion for leave to file an amended complaint (docket no. 17); and plaintiff's motion for default judgment (docket no. 18).

        **I.**        **Discussion**

Plaintiff filed his original complaint for violation of the ADEA on August 2, 2010. *See* Compl. (docket no. 1).  The complaint named as defendants a corporation, "General Motors a.k.a. New General Motors, a.k.a. General Motors Company, a.k.a. General Motors Corporation," "Haas TCM, Inc.," and 35 individual defendants.  *Id.*  The original complaint was never served. Plaintiff filed an amended complaint on December 1, 2010, naming as defendants "General Motors," David Stroup, Steven Tomaszewski and Raymond Tessier.   *See* Amend. Compl. (docket no. 11).

In his amended complaint, plaintiff seeks relief for a violation of the ADEA, 29 U.S.C. §§ 621-34. *Id.* at ¶ 3. Plaintiff alleged that he was dismissed from his position as an environmental engineer on May 8, 2009 and replaced by a younger individual. *Id.* at ¶¶ 7.A.-F. Plaintiff provided the following factual statement is support of his amended complaint:

> Was dismissed from position as Environmental Engineer at GM - Grand Blanc (GB), & escorted from the building. John Maksimchuk (aged 25 - 29) was installed in the same job/location. Final act in pattern of age-bias-instigated actions designed to effect my dismissal. Maksimchuk appears to have started at GB in May '09.

*Id.* at ¶ 7 ("Factual Statement"). Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on March 2, 2010. *Id.* at ¶ 10. Plaintiff seeks unspecified injunctive relief, damages, reinstatement, and costs. *Id.* at ¶ 16.

### II.    Defendants' motion to dismiss

#### A.    Legal Standard

Defendants have moved to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"). A plaintiff's obligation to provide the defendants with a statement of his claim is obligated to provide "more than labels and conclusions." *Id.* Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the

> plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In resolving motions to dismiss, the court has a duty to construe a *pro se* complaint liberally. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987). However, there are limits to the court's "liberal construction" of a *pro se* complaint. For example, the court cannot rewrite a complaint to include claims that were never presented, "conjure up unpled allegations" or "create a claim." *Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009). "[T]to hold otherwise would require the court 'to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.' *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985)." *Id.*

### B. Defendant General Motors LLC

Plaintiff has alleged a violation of the ADEA, which provides that it shall be unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a). Under the ADEA, an employer is defined as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," while an employee is defined as "an individual employed by any employer." 29 U.S.C. § 630(b) and (f).[1]

Defendant General Motors LLC contends that it is entitled to dismissal because it was not plaintiff's employer under the ADEA. The court agrees. Plaintiff is suing the current General Motors ("New GM"), for discrimination in the course of his employment which was terminated on May 8, 2009.[2] Plaintiff, however, was employed by the previous General Motors Corporation ("Old GM"), which filed for bankruptcy on June 1, 2009, a few weeks after plaintiff's employment was terminated. The bankruptcy procedure was summarized by one court as follows:

> General Motors Corporation and certain of its affiliates (collectively, "GM" or the "Debtors") each commenced a case under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June 1, 2009 (the "Commencement Date") and immediately thereafter moved for approval of the sale of substantially all of their assets to a United States Treasury-sponsored purchaser, NGMCO, Inc. n/k/a General Motors, LLC (the "Purchaser" or "New GM"), pursuant to Section 363 of the Bankruptcy Code (the "Sale" or the "363 Transaction"). The Bankruptcy Court entered an order approving the 363 Transaction dated July 5, 2009 (the "Sale Order"), and issued an 87–page written decision, *In re General Motors Corp.*, 407 B.R. 463 (Bankr.S.D.N.Y.2009) (the "Sale Opinion" or "Sale Op.").

---

[1] The court notes that there are certain exceptions to the definitions of employer and employee not relevant to the plaintiff and defendants in this action. *See* 29 U.S.C. § 630(b) and (f).

[2] *Pro se* plaintiff has expressed some confusion identifying "Old GM" and "New GM." During the bankruptcy, the original General Motors Corporation (or Old GM) changed its name to Motors Liquidation Company. *See In re General Motors Corp.*, No. 09-50026 (Amended notice of change of case caption) (July 10, 2009). General Motors LLC (New GM) is the successor in interest to Vehicle Acquisition Holdings, LLC and NGMCO, Inc. (the latter entity having purchased substantially all of Old GM's assets during the bankruptcy). *See* Order (docket no. 21-1 at p. 1); *In re Motors Liquidation Company*, 447 B.R. 142, 143-45 (Bankr. S.D. N.Y.) (2011)*; In re Motors Liquidation Company*, 439 B.R. 339, 340 (Bankr. S.D. N.Y.) (2010); *In re Motors Liquidation Company*, 430 B.R. at 70; *In re General Motors Corp.*, 407 B.R. at 473.

*In re Motors Liquidation Company*, 430 B.R. 65, 70 (S.D.N.Y. 2010).

Defendants have filed supplemental documents in support of their motion to dismiss, which include an additional bankruptcy court order entered on July 5, 2009. *See In re General Motors Corp.*, No. 09-50026 (Bankr. S.D. N.Y. July 5, 2009) ("Order (I) Authorizing sale of assets pursuant to amended and restated master sale and purchase agreement with NGMCO, Inc., a U.S. Treasury-sponsored purchaser; (II) Authorizing assumption and assignment of certain executory contracts and unexpired leases in connection with the sale; and (III) Granting related relief") (docket no. 21-1). This additional bankruptcy order incorporated the amended Master Sale and Purchase Agreement ("MPA") between General Motors Corporation (Old GM) and NGMCO, Inc. (New GM), authorized Old GM to sell certain assets to New GM, and authorized New GM to assume certain liabilities of Old GM.

Under the terms of the MPA, New GM's "Assumed and Retained Liabilities" did not include plaintiff's discrimination claim against Old GM. The assumed and retained liabilities are set forth in Section 2.3 of the MPA, which provides in pertinent part as follows:

> *Section 2.3 Assumed and Retained Liabilities*.
>
> (a) The "Assumed Liabilities" shall consist only of the following Liabilities of Sellers: . . .
>
>> (xiii) (A) all Employment-Related Obligations and (B) Liabilities under any Assumed Plan, in each case, relating to any Employee that is or was covered by the UAW Collective Bargaining Agreement, except for Retained Workers Compensation Claims. . .

MPA (docket no. 21-1 at pp. 85-87).

The term "Employee-Related Obligations" referred to in Section 2.3(a)(xiii)(A) is defined in the MPA as follows:

5

> "Employment-Related Obligations" means all Liabilities arising out of, related to, in respect of or in connection with employment relationships or alleged or potential employment relationships with Sellers or any Affiliate of Sellers relating to Employees, leased employees, applicants, and/or independent contractors or those individuals who are deemed to be employees of Sellers or any Affiliate of Sellers by Contract or Law, whether filed or asserted before, on or after the Closing. **"Employment-Related Obligations" includes Claims relating to discrimination**, torts, compensation for services (and related employment and withholding Taxes), workers' compensation or similar benefits and payments on account of occupational illnesses and injuries, employment Contracts, Collective Bargaining Agreements, grievances originating under a Collective Bargaining Agreement, wrongful discharge, invasion of privacy, infliction of emotional distress, defamation, slander, provision of leave under the Family and Medical Leave Act of 1993, as amended, or other similar Laws, car programs, relocation, expense-reporting, Tax protection policies, Claims arising out of WARN or employment, terms of employment, transfers, re-levels, demotions, failure to hire, failure to promote, compensation policies, practices and treatment, termination of employment, harassment, pay equity, employee benefits (including post-employment welfare and other benefits), employee treatment, employee suggestions or ideas, fiduciary performance, employment practices, the modification or termination of Benefit Plans or employee benefit plans, policies, programs, agreements and arrangements of Purchaser, including decisions to provide plans that are different from Benefit Plans, and the like. Without limiting the generality of the foregoing, with respect to any Employees, leased employees, and/or independent contractors or those individuals who are deemed to be employees of Sellers or any Affiliate of Sellers by Contract or Law, "Employment-Related Obligations" includes payroll and social security Taxes, contributions (whether required or voluntary) to any retirement, health and welfare or similar plan or arrangement, notice, severance or similar payments required under Law, and obligations under Law with respect to occupational injuries and illnesses.

MPA (docket no. 21-1 at p. 64) (emphasis added).

In addition, the MPA provided for the assumption of certain liabilities as set forth in Section 6.17, such as transferred employees (6.17(a)) and employees of purchased subsidiaries (6.17(b)). *Id.* at Section 6.17 (docket no. 21-1 at pp. 131-36).

The MPA further provided that,

> Each Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability of any Seller, whether occurring or accruing before, at or after the Closing, other than the Assumed Liabilities. In furtherance and

> not in limitation of the foregoing, and in all cases with the exception of the Assumed Liabilities, neither Purchaser nor any of its Affiliates shall assume, or be deemed to have assumed, any Indebtedness, Claim or other Liability of any Seller or any predecessor, Subsidiary or Affiliate of any Seller whatsoever, whether occurring or accruing before, at or after the Closing, including the following (collectively, the "<u>Retained Liabilities</u>"): . . .
>
>> (vii)   all Employment-Related Obligations not otherwise assumed in Section 2.3(a) and Section 6.17, including those arising out of, relating to, in respect of or in connection with the employment, potential employment or termination of employment of any individual (other than any Employee that is or was covered by the UAW Collective Bargaining Agreement) (A) prior to or at the Closing (including any severance policy, plan or program that exists or arises, or may be deemed to exist or arise, as a result of, or in connection with, the transactions contemplated by this Agreement) or (B) who is not a Transferred Employee arising after the Closing and with respect to both clauses (A) and (B) above, including any Liability arising out of, relating to, in respect of or in connection with any Collective Bargaining Agreement (other than the UAW Collective Bargaining Agreement) . . .

*Id.* at Section 2.3(b) (docket no. 21-1 at pp. 87-88).

When it approved Old GM's sale of its assets under the MPA, the bankruptcy court addressed the apportionment of liability for employee-related obligations, summarizing the liabilities assumed by New GM and the liabilities retained by Old GM:

> *(b) Assumed and Excluded Liabilities*
>
> Old GM will retain all liabilities except those defined in the MPA as "**Assumed Liabilities**." The Assumed Liabilities include: . . .
>
>> (iii) all employment-related obligations and liabilities under any assumed employee benefit plan relating to employees that are or were covered by the UAW collective bargaining agreement; . . .
>
> The liabilities being retained by Old GM include: . . .
>
>> (v) employment-related obligations not otherwise assumed, including, among other obligations, those arising out of the employment, potential employment, or termination of any individual

>> (other than an employee covered by the UAW collective bargaining agreement) prior to or at the Closing.

*In re General Motors Corp.*, 407 B.R. at 481-82 (emphasis in original).

Plaintiff's discrimination claims fall within the definition of employment-related obligations under the MPA. Because plaintiff did not allege that he was an employee covered by the UAW collective bargaining agreement, his claims are among those employment-related obligations retained by Old GM (i.e., claims arising out of the employment or termination of an individual "other than an employee covered by the UAW collective bargaining agreement"). *See* MPA (docket no. 21-1 at pp. 64, 85-88, 131-36); *In re General Motors Corp.*, 407 B.R. at 481-82. New GM neither employed plaintiff prior to his alleged termination on May 8, 2009, nor assumed liability for any discrimination claims that arose from plaintiff's employment at Old GM under the terms of the MPA. Accordingly, New GM's motion to dismiss should be granted as to plaintiff's ADEA claim.

### C. The individual defendants

Plaintiff has also sued three individual defendants, David Stroup, Steven Tomaszewski and Raymond Tessier. In previous filings in this action, plaintiff has identified those individuals as his supervisors. But whether supervisors or merely fellow employees, persons sued in their individual capacities are not included within the statutory definition of "employer" under Title VII and its sister civil rights statutes, including the ADEA, ADA and Rehabilitation Act, and accordingly cannot be held personally liable for discrimination. *Hiler v. Brown*, 177 F.3d 542, 546, fn. 5 (6th Cir. 1999) (collecting cases and noting that the ADA, ADEA and Rehabilitation Act borrowed the definition of "employer" from Title VII). *See Ford v. Tennessee Human Rights Commission*, No. 99-5415, 2000 WL 125903 at *1 (6th Cir. Jan. 28, 2000) (plaintiff's claims were

not cognizable as to the individual defendants because "Title VII and the ADEA do not permit employees and supervisors to be sued in their individual capacities"); *Wathen v. General Electric Co.*, 115 F.3d 400, 404 (6th Cir. 1997) (an individual employee/supervisor who does not otherwise qualify as an "employer" may not be held personally liable under Title VII and discrimination statutes which mirror Title VII); *Howard v. DaimlerChrysler Corp.*, 290 F.Supp.2d 784, 791-92 (E.D. Mich.2003) ("[t]he Sixth Circuit Court of Appeals has rejected the concept of individual liability under Title VII, the ADA, and the ADEA") (listing cases).  Plaintiff cannot state a claim for relief against the individual defendants for violation of the ADEA, and accordingly, defendants' motion to dismiss David Stroup, Steven Tomaszewski and Raymond Tessier should be granted.

### III.     Motion to amend (docket no. 17)

On May 26, 2011, plaintiff filed a "Request for the court's leave to amend complaint 764 (to be more reflective of the component causes of action supporting the stated case)" (docket no. 17).  As previously discussed, plaintiff filed an amended complaint on December 1, 2010. *See* docket no. 11.  After a party has amended his complaint once as a matter of course, Fed. R. Civ. P. 15(a)(2) provides that a party may amend his pleading only with the court's leave which the court should "freely give leave when justice so requires."  Plaintiff's motion should be denied.  As an initial matter, plaintiff's motion for leave to amend did not include a supporting brief pursuant to W.D. Mich. LCivR 7.1(a) (requiring motions to be accompanied by a supporting brief which "shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which the party relies").  While plaintiff filed a "brief" and "revised brief," it is unclear whether these were in response to defendants' motion to dismiss or in support of a second amended complaint.  *See*

Brief (docket no. 16) and Revised Brief (docket no. 19). While these briefs set forth a chronology of various events which occurred at plaintiff's workplace from 1999 through 2009, they do not include legal argument relevant to the deficiencies in the amended complaint and neither is a supporting brief as contemplated by the court rules.

Furthermore, plaintiff did not tender a proposed second amended complaint or explain how this pleading would differ from the amended complaint. *See* discussion in § II, *supra*. Rather, the motion for leave to amend refers to matters not before the court and statements to be made in future filings, *e.g.*, plaintiff states that "[t]he primary complaint is more easily comprehended if the constituent events contributing to the overarching complaint can be seen in perspective" and that a future brief "will attempt to incorporate these component circumstances into a more cohesive document." *See* Motion for leave to amend (docket no. 17). Plaintiff has not explained how his second amended complaint would correct the fatal defects in his pending amended complaint. The court may deny a motion to amend as futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Campbell v. BNSF Railway Company*, 600 F.3d 667, 677 (6th Cir. 2010).

For all these reasons, plaintiff's motion to amend (docket no. 17) should be denied.

### IV.     Motion for default judgment (docket no. 18)

Finally, plaintiff has moved for default judgment. This motion is procedurally improper. Fed. R. Civ. P. 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." In turn, the entry of a default under is a prerequisite to entry of a default judgment under Fed. R. Civ. P. 55(b). *Ramada Franchise*

*Systems, Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004).  The Clerk of the Court has not entered a default as to any defendant in this case. On the contrary, all defendants have entered an appearance in this action and have moved to dismiss plaintiff's claims.  In the absence of a default, plaintiff's motion for a default judgment is not properly before the court.  Plaintiff's motion for default judgment (docket no. 18) should be denied.

### V.     Recommendation

For these reasons, I respectfully recommend that defendants' motion to dismiss (docket no. 13) be **GRANTED**, that plaintiff's motion to amend (docket no. 17) be **DENIED**, that plaintiff's motion for default judgment (docket no. 18) be **DENIED**, and that this action be **DISMISSED**.


Dated:  January 18, 2012                           /s/ Hugh W. Brenneman, Jr.
                                                                    HUGH W. BRENNEMAN, JR.
                                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).